No. 2--03--1036

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE

OF ILLINOIS,

Plaintiff-Appellee,

v.

FREDRICK HAMPTON,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of Du Page County.

No. 02--CF--1085

Honorable

Kathryn E. Creswell,

Judge, Presiding.

______________________________________________________________________________

JUSTICE BOWMAN delivered the opinion of the court:

Following a jury trial, defendant, Fredrick Hampton, was convicted of the unlawful use of a weapon by a felon (720 ILCS 5/24--1.1(a) (West 2002)).  Defendant appeals, contending that the evidence was insufficient to prove beyond a reasonable doubt that he knew a weapon was in the car he was driving.  We reverse.

I. BACKGROUND

On April 11, 2002, Officer Todd Edwards stopped a maroon Honda because its temporary registration was expired.  Defendant, who was the driver, gave Edwards an Illinois identification card and a receipt for insurance showing that a payment was due.  Edwards thought that defendant appeared nervous, and defendant's hands were shaking.  A check of defendant's driver's license showed that it was suspended, so Edwards arrested him.  While searching the car incident to the arrest, Edwards found a Playstation, some DVDs, and other personal belongings in the car.  In the unlocked glove compartment, Edwards found a tube sock with a loaded handgun inside.  Defendant was charged with the unlawful use of a weapon.

At trial, Edwards testified to the circumstances of defendant's arrest.  His partner, Jeff Parrish, testified that a check on the car showed that it was registered to someone named Hampton, but with a first name different from defendant's.  He could not recall that name, however.  An evidence technician testified that no useful fingerprints could be collected from the gun.  The parties stipulated that defendant had previously been convicted of a felony.

Defendant's father, Reverend James Hampton, testified that he had another son, James, Jr., who died on March 26, 2002.  James, Jr., had been in the hospital for about two months before he died.  Defendant moved in with his father on March 5.  On April 11, his father sent defendant to pick up some video games.  He suggested that defendant use James, Jr.'s car.  To his knowledge, this was the first time defendant had driven it.  He had never seen defendant with a gun before.  Defendant's brother, Ricky Hampton, also had not seen defendant drive James, Jr.'s car before.

The jury found defendant guilty.  The trial court sentenced him to 3 years' imprisonment, with credit for 513 days already served.  Defendant timely appeals.

Defendant contends that the State failed to prove him guilty beyond a reasonable doubt.  Specifically, he argues that the State did not prove that he knew the gun was in the glove compartment.  He points out that the uncontradicted evidence was that the car he was driving belonged to his late brother and that defendant had not used it before.

II. ANALYSIS

Where the sufficiency of the evidence is challenged on appeal, the relevant question is whether, after viewing all the evidence in a light most favorable to the prosecution, a rational trier of fact could have found all the elements of the offense beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).  
To prove defendant guilty of unlawful use of a weapon by a felon, the State had to prove that he knowingly possessed on or about his person a prohibited weapon.  720 ILCS 5/24--1.1(a) (West 2002).  As this is a constructive possession case, the State had to prove that defendant (1) had knowledge of the presence of the weapon and (2) had immediate and exclusive control over the area where the weapon was found.  
People v. Grant
, 339 Ill. App. 3d 792, 798 (2003).  Defendant apparently concedes that the gun in the glove compartment was "on or about his person," in that he had exclusive control over the car in which the gun was found.  Nevertheless, the State still had to prove that defendant had knowledge that the gun was in the glove compartment.

Citing 
People v. McCarter
, 339 Ill. App. 3d 876 (2003), the State contends that control over the location where a weapon was found gives rise to an inference that the defendant constructively possessed the weapon.  Essentially, the State's position is that proof of the second element of constructive possession permits an inference of the first element.  We disagree with such an inference as it applies to the facts and circumstances of this case.

In holding that control over the location where a weapon was found gives rise to an inference that the defendant constructively possessed the weapon, and that such an inference is sufficient to sustain a conviction absent other factors that might create a reasonable doubt as to guilt, the 
McCarter
 court relied on 
People v. Smith
, 191 Ill. 2d 408 (2000).  In 
Smith
, our supreme court stated that "the mere presence of illegal drugs on premises which are under the control of the defendant gives rise to an inference of knowledge and possession."  
Smith
, 191
 
Ill. 2d at 413.  In so stating, the 
Smith
 court relied on its previous decision in 
People v. Nettles
, 23 Ill. 2d 306 (1961), where the court explained why such an inference arises:

"[W]here narcotics are found on premises under defendant's control, it may be inferred that the defendant had both knowledge and control of the narcotics.  This inference is based largely upon the nature of the commodity and the manner in which its illegal traffic is conducted.  By law the use of narcotics, except for specified medicinal purposes, is rigidly condemned.  Because of this illegitimate nature of narcotics, they are sold for exorbitant sums on the black market and are therefore of great value to the person possessing them.  Furthermore, since their mere possession may subject such person to severe criminal consequences, the narcotics traffic is conducted with the utmost secrecy and care.  Human experience teaches that narcotics are rarely, if ever, found unaccountably in a person's living quarters."  
Nettles
, 23 Ill. 2d at 308.

Each case in this line of authority involved contraband that was found in the defendant's own home or living quarters.  See 
Smith
, 191 Ill. 2d 408 (cocaine and cannabis found in the defendant's residence); 
Nettles
, 23 Ill. 2d 306 (narcotics found in the defendant's residence); 
McCarter
, 339 Ill. App. 3d 876 (AK-47 assault rifle, a handgun, and ammunition found in the defendant's bedroom).  The factual particulars of these cases, combined with their underlying rationale as explained in 
Nettles
, leads us to the conclusion that knowledge cannot be inferred 
merely because a defendant had control over the area in which the evidence was discovered at the time of its discovery.  Rather, we believe that the rule to be gleaned from these cases is that, in order for the inference to arise
 of a defendant's knowledge of the evidence, the evidence must be (1) found within the defendant's living quarters or other place over which the defendant has regular, ongoing control; and (2) an item that human experience teaches is rarely, if ever, found unaccountably in such a place.

The loaded handgun found within the glove compartment of the vehicle that defendant was driving certainly is an item that human experience teaches is rarely, if ever, found unaccountably in a given place.  However, in order for the inference to arise
 of defendant's knowledge of the handgun within the vehicle's glove compartment, the State had to demonstrate that defendant had regular, ongoing control over the vehicle that he was driving, similar to the regular and ongoing control that one has over his own living quarters.  Regular and ongoing control over a vehicle might be established through proof that the defendant owns or regularly drives the vehicle.  In this case, the State proved merely that defendant was driving the vehicle in question at the time the vehicle was stopped.  The State offered no proof that defendant had any regular, ongoing control over the vehicle in which the weapon was found or that defendant had ever driven the vehicle prior to the time of the traffic stop.  Thus, we find that the trier of fact could not infer defendant's knowledge of the handgun from the mere fact that he was driving the automobile in which it was discovered.  

Because the State may not rely on an inference of knowledge stemming from defendant's presence in the car, we must determine whether the State presented other evidence of knowledge.  Although it is apparent that no direct evidence was offered, we look to the factors outlined in 
People v. Bailey
, 333 Ill. App. 3d 888 (2002), to determine whether the State offered circumstantial evidence from which defendant's knowledge could be inferred.

In 
Bailey
, the defendant was a passenger in a car that the police stopped.  While searching the car, the officers found a gun hidden under the passenger's seat.  In reversing the defendant's conviction of aggravated unlawful use of a weapon, the court applied a nonexclusive four-factor test, derived from 
People v. Davis
, 50 Ill. App. 3d 163 (1977), for determining when a defendant's knowledge of a weapon in a car could be inferred.  These factors included (1)
 the visibility of the weapon from the defendant's location in the vehicle; (2) the amount of time in which the defendant had an opportunity to observe the weapon; (3) gestures or movements by the defendant that would suggest an effort to retrieve or conceal the weapon; and (4) the size of the weapon.  
Bailey
, 333 Ill. App. 3d at 891-92.

Applying the 
Bailey
 factors, we continue to find that the State's evidence proved little more than that defendant was in the car where the gun was found
.  
The gun was found inside a sock in the glove compartment.  It obviously would not have been visible to defendant as he drove.  
The uncontradicted evidence showed that the car belonged to defendant's deceased brother.  Even Parrish testified that the car was registered to someone named Hampton but with a first name different from defendant's.  Moreover, defendant's father's testimony showed that defendant had been driving the car for only a few minutes before he was arrested.  Both defendant's father and brother testified that, to their knowledge, defendant had not used the car previously.  Edwards testified that defendant did not make any furtive movements as if he were attempting to conceal the gun.  Finally, the weapon at issue was a handgun that was small enough to fit inside of a sock.
  Based on these facts, we find that no rational trier of fact could have found, beyond a reasonable doubt, that defendant knowingly possessed the handgun.

The State notes that a Playstation and other personal property were found in the backseat of the car.  It contends that "it is a logical inference" that such items "would not have been left in a car which was sitting out unused."  This may be true, but the State presented no evidence to connect those items to defendant.  They could have belonged to defendant's father, his brother Ricky, or to any number of family members or friends.  It is also entirely possible that the items belonged to defendant's deceased brother and that either no one knew they were there or no one had gotten around to cleaning out the car after his death.  Even if the items belonged to defendant, the fact that defendant stored some items in the backseat of his brother's car would not definitively prove that he had looked inside the glove compartment.

III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed.

Reversed.

O'MALLEY, P.J., and KAPALA, J., concur.