**2024 IL 129237**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 129237)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
VINCENT MOLINA, Appellant.

*Opinion filed December 5, 2024.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Justices Overstreet, Cunningham, and Rochford concurred in the judgment and opinion.

Justice O'Brien dissented, with opinion, joined by Chief Justice Theis.

Justice Holder White took no part in the decision.

**OPINION**

¶ 1    The issue presented in this case is whether a police officer's detection of the odor of raw cannabis coming from a vehicle provides the officer with probable

cause to conduct a warrantless search of the vehicle. Illinois State Police trooper Ryan Wagand conducted a search of the vehicle Vincent Molina was a passenger in based solely on the odor of raw cannabis coming from the vehicle. Wagand suspected that there was cannabis in the vehicle that was not in an odor-proof container, which is a requirement of section 11-502.15 of the Illinois Vehicle Code (625 ILCS 5/11-502.15(c) (West 2020) (prohibiting the possession of cannabis in a motor vehicle upon a highway unless it is stored in a "sealed, odor-proof, child-resistant cannabis container")). Wagand's search uncovered improperly stored cannabis, and Molina was charged with a violation of section 11-502.15 of the Vehicle Code.

¶ 2        Molina filed a motion to suppress the cannabis. The circuit court of Whiteside County granted Molina's motion to suppress the evidence, and the State appealed. The appellate court reversed and remanded for trial, holding that the odor of raw cannabis, standing alone, gave police probable cause to search the automobile in which Molina was a passenger. 2022 IL App (4th) 220152, ¶¶ 44-58.

¶ 3        We allowed Molina's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2021). We also allowed the American Civil Liberties Union, ACLU of Illinois, the National Association of Criminal Defense Lawyers, and the Illinois Association of Criminal Defense Lawyers to file an *amicus curiae* brief on behalf of Molina's position. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). For the following reasons, we affirm the judgment of the appellate court.

¶ 4                                    I. BACKGROUND

¶ 5        On December 3, 2020, Trooper Wagand saw a car speeding on Interstate 88 in Whiteside County. See 625 ILCS 5/11-601(f)(1.5) (West 2020) (setting the "maximum speed limit" at "70 miles per hour upon any interstate highway"). Wagand effectuated a traffic stop.[1]  After Wagand smelled the odor of raw cannabis coming from the car, he searched the car. Wagand found that Molina, a passenger in the car, possessed several "joints" of cannabis. Prosecutors charged Molina with misdemeanor possession of cannabis by an automobile passenger. *Id.* § 11-

---

[1]Molina conceded in the circuit court that the initial stop was valid. The validity of the stop has never been at issue, and therefore, we need not discuss it further.

502.15(c) ("No passenger may possess cannabis within any passenger area of any motor vehicle upon a highway in this State except in a sealed, odor-proof, child-resistant cannabis container.").

¶ 6                                    A. Circuit Court

¶ 7        Molina filed a motion to suppress the cannabis. At the hearing on the motion, Wagand testified that Molina was the front-seat passenger in a vehicle he stopped for speeding. Wagand approached on the passenger side, and the passenger-side window was lowered. Wagand initially testified that he smelled the strong odor of burnt cannabis coming from inside the vehicle. However, after being shown his police report, Wagand corrected his testimony and stated that he detected a strong odor of fresh cannabis. Wagand testified that he had training and experience in the discernment of the difference between the odor of burnt and raw cannabis.

¶ 8        Wagand testified that he decided to search the vehicle based on the odor of fresh cannabis coming from the vehicle. Wagand found several rolled joints in a small cardboard box in the center console. Wagand also found suspected cannabis in a clear plastic container with an attached and sealed lid in the glove box.

¶ 9        The circuit court granted the motion to suppress. The court held that the odor of raw cannabis, without more, is insufficient as a matter of law to establish probable cause to search a vehicle. The court noted that a contrary holding would place Illinois citizens over the age of 21 in the untenable position of exercising their rights under the Cannabis Regulation and Tax Act (Regulation Act) (410 ILCS 705/1-1 *et seq.* (West 2020)) while simultaneously forfeiting their constitutional right to be free from unreasonable searches.

¶ 10       The State filed an interlocutory appeal pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. Jan. 1, 2023) with a certificate stating that the order substantially impaired its prosecution of the case (see *People v. Truitt*, 175 Ill. 2d 148, 151-52 (1997)).

¶ 11                                B. Appellate Court

¶ 12        The appellate court reversed, holding that "the smell of raw cannabis, without any corroborating factors, is sufficient to establish probable cause to search a person's vehicle." 2022 IL App (4th) 220152, ¶ 52. The court recognized the "recent changes in the law legalizing possession of small amounts of cannabis" but also noted that there remain "(1) illegal ways to transport it, (2) illegal places to consume it, and (3) illegal amounts of it to possess." *Id.* ¶ 43.

¶ 13        Based on the current regulatory state of cannabis, the court was unpersuaded that the "legal landscape" had changed in such a way as to render this court's opinions in *People v. Stout*, 106 Ill. 2d 77 (1985), and *People v. Hill*, 2020 IL 124595, inapplicable. 2022 IL App (4th) 220152, ¶ 43. The court concluded that

> "an officer who smells cannabis in a vehicle he has just stopped is almost certain to discover a violation of the Vehicle Code because the law clearly states that when cannabis is transported in a private vehicle, the cannabis must be stored in a *sealed, odor-proof* container—in other words, the cannabis should be undetectable by smell by a police officer." (Emphasis in original) *Id.* ¶ 44 (citing 625 ILCS 5/11-502.15(c) (West 2020)).

We allowed Molina's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 14                                 II. ANALYSIS

¶ 15        The sole issue before this court is whether Trooper Wagand had probable cause to search the vehicle Molina was a passenger in after Wagand smelled the odor of raw cannabis coming from the vehicle. If the answer is yes, the search was valid, and the motion to suppress should have been denied. If the answer is no, the search violated Molina's constitutional rights, and the motion to suppress was correctly granted.

## A. Standard of Review

We review the trial court's ruling on the motion to suppress under the two-part standard enunciated by the United States Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 696-97 (1996). *Hill*, 2020 IL 124595, ¶ 14. "Factual findings by the trial court will be reversed only if they are against the manifest weight of the evidence, but the ultimate legal determination as to whether suppression is warranted is reviewed *de novo*." *People v. Salamon*, 2022 IL 125722, ¶ 75.

## B. Constitutional Prohibitions Against Unreasonable Searches

The fourth amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause ***." U.S. Const., amend. IV. The Illinois Constitution similarly provides: "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches ***. No warrant shall issue without probable cause ***." Ill. Const. 1970, art. I, § 6. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).

One well-established exception is for searches of automobiles. See *Carroll v. United States*, 267 U.S. 132, 156 (1925); *People v. Webb*, 2023 IL 128957, ¶ 24 ("There are recognized exceptions to the general rule, however, including an exception for searches of vehicles."). The automobile exception is justified because of an automobile's "transient nature," which "often renders it impracticable to secure a warrant before the automobile escapes the jurisdiction in which the warrant must be sought." *Hill*, 2020 IL 124595, ¶ 21. "Under the automobile exception, law enforcement officers may undertake a warrantless search of a vehicle if there is probable cause to believe that the automobile contains evidence of criminal activity that the officers are entitled to seize." *People v. James*, 163 Ill. 2d 302, 312 (1994).

¶ 21                          C. Probable Cause to Search

¶ 22        Probable cause exists where the evidence known to the officer raises a "fair
       probability that contraband or evidence of a crime will be found in a particular
       place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); see *id.* at 243 n.13 ("[P]robable
       cause requires only a probability or substantial chance of criminal activity, not an
       actual showing of such activity."). "Whether the necessary probability exists is
       governed by commonsense considerations that are factual and practical, rather than
       by technical rules." *People v. Manzo*, 2018 IL 122761, ¶ 30. "[P]robable cause does
       not require an officer to rule out any innocent explanations for suspicious facts."
       *Hill*, 2020 IL 124595, ¶ 24. "Instead, it requires only that the facts available to the
       officer—including the plausibility of an innocent explanation—would warrant a
       reasonable man to believe there is a reasonable probability" that a search of the
       automobile will uncover contraband or evidence of criminal activity. *Id.* "A court
       must examine the events leading up to the search or seizure, and then decide
       whether these historical facts, viewed from the standpoint of an objectively
       reasonable law enforcement officer, amount to probable cause." *People v. Jones*,
       215 Ill. 2d 261, 275 (2005).

¶ 23                  D. Evolution of Cannabis Law—Prelegalization

¶ 24        Because cannabis law has evolved over the last decade, we briefly address the
       evolution of statutes dealing with cannabis and the caselaw analyzing whether
       probable cause exists based on an officer's detection of the odor of cannabis coming
       from a vehicle. And because probable cause is predicated on the inculpatory and
       exculpatory facts known to the officer after the stop and the likelihood that a search
       will produce contraband or evidence of criminal activity, we address the state of
       cannabis laws at the time of the stop in December 2020.

¶ 25        Prior to 1971, marijuana was classified as a narcotic and punished accordingly.
       See *People v. McCabe*, 49 Ill. 2d 338, 350 (1971) (*per curiam*) (observing that the
       legislature had recently removed marijuana from the Narcotic Drug Act (Ill. Rev.
       Stat. 1969, ch. 38, ¶ 22-1 *et seq.*)). In 1971, the legislature enacted the Cannabis
       Control Act (Control Act). See Pub. Act 77-758, § 1 (eff. Aug. 16, 1971) (adding

- 6 -

Ill. Rev. Stat. 1971, ch. 56½, § 701 *et seq.*).[2] The Control Act provided: "It is unlawful for any person knowingly to possess cannabis." Ill. Rev. Stat. 1971, ch. 56½, § 704. The Control Act set penalties between a Class C misdemeanor for the possession of not more than 2.5 grams of any substance containing cannabis and a Class 3 felony for the possession of more than 500 grams of any substance containing cannabis. *Id.* In *Stout*, 106 Ill. 2d at 88, this court held that "additional corroboration" was not required to establish probable cause for a warrantless search "where a trained and experienced police officer detects the odor of cannabis emanating from a defendant's vehicle."

¶ 26     In 2013, the General Assembly passed the Compassionate Use of Medical Cannabis Pilot Program Act (Medical Act). See Pub. Act 98-122, § 1 (eff. Jan. 1, 2014) (adding 410 ILCS 130/1 *et seq.*). The Medical Act made it lawful for certain individuals with debilitating medical conditions to possess and use cannabis. 410 ILCS 130/10(t), 25(a) (West 2014). Nevertheless, the Vehicle Code prohibited the use of cannabis in a motor vehicle upon a highway (625 ILCS 5/11-502.1(a) (West 2014)), and if it was possessed in a motor vehicle, the cannabis had to be stored in a "sealed, tamper-evident medical cannabis container" (*id.* § 11-502.1(b), (c)).

¶ 27     In 2016, the Control Act was amended, and the possession of not more than 10 grams of any substance containing cannabis was made a civil law violation with a minimum fine of $100 and a maximum fine of $200. 720 ILCS 550/4(a) (West 2018); see Pub. Act 99-697, § 40 (eff. July 29, 2016). Possession of more than 10 grams of a substance containing cannabis remained criminal, with penalties ranging from a Class B misdemeanor to a Class 1 felony. 720 ILCS 550/4(b)-(g) (West 2018).

¶ 28     While the legal landscape was evolving—the legalization of medical cannabis and the decriminalization of the possession of a small amount of cannabis—this court decided *Hill*, 2020 IL 124595. In *Hill*, this court decided the propriety of a

---

[2]Among the legislative findings were that cannabis was "widely used and pervasive among the citizens of Illinois" and that previous laws on cannabis had "unnecessarily and unrealistically drawn a large segment of our population within the criminal justice system." Ill. Rev. Stat. 1971, ch. 56½, § 701. The General Assembly declared its intent to "establish a reasonable penalty system which is responsive to the current state of knowledge concerning cannabis and which directs the greatest efforts of law enforcement agencies toward the commercial traffickers and large-scale purveyors of cannabis." *Id.*

search that occurred on May 29, 2017. *Id.* ¶ 5. The defendant was pulled over based on the officer's belief that the passenger was a fugitive. *Id.* The defendant drove a few blocks before pulling over, which the officer testified was indicative of someone in the car concealing or destroying contraband or producing a weapon. *Id.* The officer approached the passenger side and immediately smelled the strong odor of raw cannabis. *Id.* The passenger admitted that he smokes cannabis and that he had smoked earlier that day. *Id.* ¶ 10. The officer also saw a "bud" in the back seat of the car. *Id.*

¶ 29    This court first declined to address the "narrow legal issue" of whether *Stout* remained good law because, unlike the officer in *Stout*, the officer relied on more than the odor of cannabis. *Id.* ¶¶ 16, 18. In a footnote we stated: "Although we do not reach whether the odor of cannabis, alone, is sufficient to establish probable cause, the smell and presence of cannabis undoubtedly remains a factor in a probable cause determination." *Id.* ¶ 18 n.2.

¶ 30    This court then analyzed the changes in Illinois's cannabis law. *Id.* ¶¶ 27-31. We rejected the defendant's argument that decriminalization of small amounts of cannabis affected the probable cause analysis because the possession of cannabis remained unlawful. See *id.* ¶¶ 31 ("the decriminalization of possessing small amounts of cannabis did not alter the status of cannabis as contraband"). Regarding the Medical Act, we noted that, "[w]hile the mere presence of cannabis for medical users may no longer be immediately attributable to criminal activity or possession of contraband, such users must possess and use cannabis in accordance with the [Medical] Act." *Id.* ¶ 34 (citing the Vehicle Code's requirement that a medical user's possession of cannabis within a motor vehicle had to be in a "sealed, tamper-evident medical cannabis container" (625 ILCS 5/11-502.1(b), (c) (West 2016))). With the legal framework laid, this court found that the officers had probable cause to search the defendant's vehicle based on (1) the defendant's delay in pulling over and the officer's testimony that a delay often means the car's occupants are hiding contraband or retrieving a weapon, (2) the passenger stating that he smokes cannabis and had done so that day, (3) the officer's observation of a loose "bud" in the back seat, and (4) the smell of a strong odor of cannabis, which "together" indicated that cannabis was in the car and, likely, not properly contained. *Id.* ¶ 35.

¶ 31                        E. Public Act 101-27: Control Act Amended and
                                  Regulation Act Enacted

¶ 32        On June 25, 2019, the General Assembly passed Public Act 101-27 (eff. June
        25, 2019), which amended the Control Act, amended the Vehicle Code, and created
        the Regulation Act. We pause here because the validity of parts of the statutory
        scheme at issue in this case is subject to dispute. Two provisions cover the
        possession of cannabis within a motor vehicle. Each provision contains distinct
        requirements. See 410 ILCS 705/10-35(a)(2)(D) (West 2020) (requiring cannabis
        possessed in a vehicle to be in a "reasonably secured, sealed container and
        reasonably inaccessible while the vehicle is moving"); 625 ILCS 5/11-502.15(b),
        (c) (West 2020) (requiring cannabis possessed in a motor vehicle to be in a "sealed,
        odor-proof, child-resistant cannabis container"). We are asked to determine if both
        provisions were valid at the time of the stop or, if only one provision was valid,
        which one.


¶ 33                           1. Principles of Statutory Interpretation

¶ 34        "This court has frequently restated the basic principles of statutory
        interpretation." *People v. Lane*, 2023 IL 128269, ¶ 11. "The most fundamental rule
        in statutory construction is to give effect to the legislative intent." *Murray v.
        Chicago Youth Center*, 224 Ill. 2d 213, 235 (2007). "The language of the statute is
        the best indication of the legislature's intent." *Id.* "If the language of a statute is
        clear, this court must give effect to its plain and ordinary meaning without resort to
        other aids of statutory construction." *Id.* We review issues of statutory interpretation
        *de novo*. *Doe v. Burke Wise Morrissey & Kaveny, LLC*, 2023 IL 129097, ¶ 20.


¶ 35                    2. Provisions Legalizing Use and Possession of Cannabis

¶ 36        In Public Act 101-27 (eff. June 25, 2019) and Public Act 101-593 (eff. Dec. 4,
        2019), the General Assembly amended section 4 of the Control Act to provide:
        "Except as otherwise provided in the Cannabis Regulation and Tax Act and the
        Industrial Hemp Act, it is unlawful for any person knowingly to possess cannabis."
        The Control Act maintained the same penalty structure regarding the possession of
        cannabis: the possession of not more than 10 grams of a substance containing

cannabis remained a civil law violation, and the possession of more than 10 grams was penalized ranging from a Class B misdemeanor to a Class 1 felony. See 720 ILCS 550/4(a)-(g) (West 2020).

¶ 37    In the same Public Act 101-27 (eff. June 25, 2019), the General Assembly enacted the Regulation Act (410 ILCS 705/1-1 *et seq.* (West 2020)), the most comprehensive and detailed legislation regarding the use and possession of cannabis in the State of Illinois.[3] In what could be described as the legalization clause, section 10-5 of the Regulation Act provides:

"Beginning January 1, 2020, notwithstanding any other provision of law, and except as otherwise provided in this Act, the following acts are not a violation of this Act and shall not be a criminal or civil offense under State law or the ordinances of any unit of local government of this State or be a basis for seizure or forfeiture of assets under State law for persons other than natural individuals under 21 years of age:

(1) possession, consumption, use, purchase, obtaining, or transporting cannabis paraphernalia or an amount of cannabis for personal use that does not exceed the possession limit[4] under Section 10-10 or otherwise in accordance with the requirements of this Act[.]" *Id.* § 10-5(a)(1).

¶ 38    Two clauses in section 10-5 stand out. The first is the "notwithstanding" clause. As the United States Supreme Court has explained, "in construing statutes, the use of *** a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993). Our

---

[3]The legislative findings for the Regulation Act include the following:

"In the interest of allowing law enforcement to focus on violent and property crimes, generating revenue for education, substance abuse prevention and treatment, freeing public resources to invest in communities and other public purposes, and individual freedom, the General Assembly finds and declares that the use of cannabis should be legal for persons 21 years of age or older and should be taxed in a manner similar to alcohol." 410 ILCS 705/1-5(a) (West 2020).

[4]Section 10-10 defines the possession limit "for a person who is 21 years of age or older and a resident of this State" as "(1) 30 grams of cannabis flower; (2) no more than 500 milligrams of THC contained in cannabis-infused product; [and] (3) 5 grams of cannabis concentrate." 410 ILCS 705/10-10(a)(1)-(3) (West 2020).

appellate court has similarly recognized that the term " 'notwithstanding' " means " 'in spite of' " and the use of the phrase " '[n]otwithstanding the other provisions of this Article' " in one section means that that section controls over any conflicting section within the same article. *Waliczek v. Retirement Board of Firemen's Annuity & Benefit Fund of Chicago*, 318 Ill. App. 3d 32, 36 (2000) (quoting 40 ILCS 5/5-136.1 (West 1998)). In short, the "notwithstanding" clause means that the Regulation Act prevails over any conflicting "provision of law."

¶ 39    The second is the "except as otherwise provided in this Act" clause. The phrase, as simply understood, means that the forthcoming proposition holds unless an exception is expressly provided in the Regulation Act. See *Crosby v. United States*, 506 U.S. 255, 258 (1993) (holding that the use of the phrase " 'except as otherwise provided by this rule' " (emphasis omitted) was a "limiting phrase" that marked as "exclusive" the list of situations where a trial court could depart from the general rule (quoting Fed. R. Crim. P. 43 (eff. Aug. 1, 1987))).

¶ 40    These two clauses, taken together, provide (1) that the forthcoming proposition applies in spite of any conflicting "provision of law" and (2) that any exception to the forthcoming proposition must be expressly provided for in the Regulation Act. The forthcoming proposition,[5] in laymen's terms, is that it is legal for an Illinois citizen who is over the age of 21 to use or possess up to 30 grams of cannabis. The proposition prevails over any other provision of law unless the Regulation Act expressly provides for an exception.

¶ 41                    3. Requirements to Possess Cannabis in a Motor Vehicle

¶ 42    Relevant here, the Regulation Act includes two exceptions to the general proposition that it is legal for an Illinois citizen who is over the age of 21 to use or

---

[5]The legalization clause is expressed in broader terms in section 10-25, titled "Immunities and presumptions related to the use of cannabis by purchasers," which provides:

"A purchaser who is 21 years of age or older is not subject to arrest, prosecution, denial of any right or privilege, or other punishment *** based solely on the use of cannabis if (1) the purchaser possesses an amount of cannabis that does not exceed the possession limit under Section 10-10 ***." 410 ILCS 705/10-25(a)(1) (West 2020).

possess up to 30 grams of cannabis. Section 10-35, titled "Limitations and penalties," provides:

"(a) This Act does not permit any person to engage in, and does not prevent the imposition of any civil, criminal, or other penalties for ***

***

(2) possessing cannabis:

* * *

(D) in a vehicle not open to the public unless the cannabis is in a reasonably secured, sealed container and reasonably inaccessible while the vehicle is moving[.]" 410 ILCS 705/10-35(a)(2)(D) (West 2020).

¶ 43 Section 10-35 further provides: "(a) This Act does not permit any person to engage in, and does not prevent the imposition of any civil, criminal, or other penalties for *** (3) using cannabis *** (D) in any motor vehicle *** [or] (F) in any public place[.]" *Id.* § 10-35(a)(3)(D), (F).

¶ 44 A plain reading of the Regulation Act would indicate that section 10-35 sets the outer bounds of conduct that can subject an individual to civil or criminal penalty. In other words, if an individual's conduct conforms to section 10-35, then that individual is immune from any punishment for the use or possession of cannabis, civil or criminal.

¶ 45 Yet, within the same public act that created the Regulation Act, the legislature amended the Vehicle Code to prohibit the possession of cannabis in a motor vehicle unless it is stored in a "sealed, odor-proof, child-resistant cannabis container." 625 ILCS 5/11-502.15(b), (c) (West 2020). The State concedes, and we agree, that the Vehicle Code contains an "additional requirement" beyond the possession requirements in the Regulation Act: namely, that the cannabis be stored in an odor-proof container.

¶ 46                 4. The Provisions of the Regulation Act and
Vehicle Code Can Be Harmonized

¶ 47       Molina contends (1) that the two provisions cannot be harmonized, (2) that the Regulation Act is both more specific and more recently enacted, and (3) that the odor-proof container requirement is, therefore, invalid. Conflicting statutory provisions would typically necessitate a determination of which statute controls. However, utilizing numerous long-standing methods of statutory interpretation, we reject Molina's argument that the odor-proof container requirement is invalid.

¶ 48       First, we have long held that "statutes passed, approved and to take effect on the same day, and relating to the same subject matter, will be assumed to have been enacted at the same time and are to be construed as one act." *People ex rel. Funk v. Hagist*, 401 Ill. 536, 541 (1948); *People ex rel. Little v. Peoria & Eastern Ry. Co.*, 383 Ill. 79, 88 (1943) ("A rule of construction, long established, requires that acts enacted at the same session of the General Assembly must be considered *in pari materia*, so that both acts must, if possible, be given effect."). Under this rule of construction, it is rational to interpret section 10-5 of the Regulation Act's use of the phrase "except as otherwise provided in this Act" to include the contemporaneous amendments to the Vehicle Code. In other words, section 11-502.15 of the Vehicle Code, enacted in the same public act that created the Regulation Act, serves as an exception to section 10-5's general grant of immunity.

¶ 49       Added support for a harmonized reading of the Regulation Act and Vehicle Code is the rule of construction that repeals by implication are not favored. See *In re Hernandez*, 2020 IL 124661, ¶ 22 ("The repeal or amendment of statutes by implication is not favored."). "Courts presume that the legislature envisions a consistent body of law when it enacts new legislation." *Lily Lake Road Defenders v. County of McHenry*, 156 Ill. 2d 1, 9 (1993). We would be ignoring our rules of statutory construction if this court were to presume that the legislature intended to simultaneously enact and invalidate the odor-proof container requirement. See *People v. Hanna*, 207 Ill. 2d 486, 501 (2003) (declining to interpret a regulation by its plain language where, to do so, the court would have to attribute "nonsensical intentions" to the Department of Public Health); *Public Citizen v. United States Department of Justice*, 491 U.S. 440, 453 n.9 (1989) (declining to interpret a statute in a way that would attribute an "outlandish" intent to Congress).

¶ 50 For the aforementioned reasons, we agree with the appellate court's holding that the

> "legislature did not intend to modify, repeal, or supersede the requirement of sections 11-502.1 and 11-502.15 of the Vehicle Code that cannabis be stored in an odor-proof container during transport in a vehicle when it mandated in the Cannabis Regulation and Tax Act and Medical Act that cannabis be 'reasonably secured' during such transport." 2022 IL App (4th) 220152, ¶ 38.[6]

¶ 51 F. Trooper Wagand Had Probable Cause to
Conduct a Warrantless Search

¶ 52 With our holding that the Vehicle Code's odor-proof container requirement was valid at the time of the stop, the result in this case is based on our precedent. As we stated in *Hill*, although cannabis may no longer be contraband in all circumstances, "users must possess and use cannabis in accordance with" our laws. *Hill*, 2020 IL 124595, ¶ 34. Wagand, an officer trained to distinguish between burnt and raw cannabis, smelled the odor of raw cannabis coming from the vehicle, and the officer's training and experience would create at least a reasonable belief or fair probability that raw cannabis was in the vehicle stored in a container that was not odor-proof. See *id.* ¶ 24; *Gates*, 462 U.S. 213 at 238.

¶ 53 We recognize the difference in our probable cause analysis based on the odor of burnt cannabis (see *People v. Redmond*, 2024 IL 129201, ¶ 66) and the odor of raw cannabis. In *Redmond*, we held that "the odor of burnt cannabis, alone, is insufficient to provide probable cause for police officers to perform a warrantless search of a vehicle." *Id*. In doing so, we compared the odor of burnt cannabis to the odor of alcohol because the possession of both cannabis and alcohol is lawful under

---

[6]Even if we were to find an ambiguity on the question of whether the odor-proof container requirement is valid, which we do not, suppression of the evidence would not be warranted. It is reasonable for a police officer to enforce a substantive law enacted by the legislature even if the substantive law is later determined to be invalid by a court. See *Michigan v. DeFillippo*, 443 U.S. 31, 39-40 (1979) (upholding an arrest as reasonable where an officer relied on a statute later determined to be invalid); *People v. Holmes*, 2017 IL 120407, ¶ 29 (relying on *DeFillippo* for the proposition that "probable cause would not be retroactively invalidated by the subsequent invalidation of the statute upon which probable cause was based at the time of the arrest").

- 14 -

some circumstances and unlawful under other circumstances. *Id.* ¶ 48. There is a key distinction between the odor of alcohol and the odor of cannabis; namely, alcohol, unlike cannabis, does not have a raw and burnt form.

¶ 54       The comparison between the odor of alcohol and the odor of burnt cannabis was appropriate in *Redmond* because both strongly indicate that the substances have been or are being consumed. And while the odor of alcohol might indicate the current unlawful possession of alcohol (see 625 ILCS 5/11-502(b) (West 2020) (providing that "alcoholic liquor within any passenger area of any motor vehicle upon a highway in this State" must be possessed "in the original container and with the seal unbroken")), that probability is significantly reduced when an officer has ruled out impaired driving. See *State v. Stevenson*, 321 P.3d 754, 763 (Kan. 2014) ("Country common sense would likewise lead one to believe that an intoxicated person would be more likely to have an open container in the vehicle from which he or she had been drinking than a sober person who had passed the field sobriety tests.").

¶ 55       On the other hand, the odor of raw cannabis coming from a vehicle strongly indicates the current presence of cannabis. And when the odor of raw cannabis comes from a vehicle driven on an Illinois highway, it is almost certain that the cannabis is being possessed in violation of the Vehicle Code's odor-proof container requirement. It is unclear what other inference an officer could draw upon the detection of the odor of raw cannabis other than that the odor is coming from cannabis currently possessed in the vehicle. In short, while cannabis is legal to possess generally, it is illegal to possess in a vehicle on an Illinois highway unless in an odor-proof container. The odor of raw cannabis strongly suggests that the cannabis is not being possessed within the parameters of Illinois law. And, unlike the odor of burnt cannabis, the odor of raw cannabis coming from a vehicle reliably points to when, where, and how the cannabis is possessed—namely, currently, in the vehicle, and not in an odor-proof container.

¶ 56       In sum, different inferences arise depending on whether the odor of burnt or raw cannabis is detected. The odor of burnt cannabis suggests prior or current cannabis use, and the odor of raw cannabis suggests that cannabis is currently possessed in the area where the odor is detected. Different laws are implicated based on those inferences. The inference of current or prior use implicates the

prohibition on the use of cannabis within a motor vehicle on an Illinois highway (625 ILCS 5/11-502.15(a) (West 2020) ("No driver may use cannabis within the passenger area of any motor vehicle upon a highway in this State.")), and the inference of current possession implicates the prohibition on the possession of cannabis within a motor vehicle on an Illinois highway unless the cannabis is in an odor-proof container (*id.* § 11-502.15(c) (prohibiting the possession of cannabis in a motor vehicle upon a highway unless it is stored in a "sealed, odor-proof, child-resistant cannabis container")). Therefore, the two distinct odors cannot be treated as equals in a probable cause analysis.

¶ 57 We also disagree with the trial court's reliance on the "many innocent reasons" a person or vehicle may smell like raw cannabis. The trial court found, without evidence in the record, that the officer did not have probable cause because a person (1) may work at a cannabis cultivation facility or a dispensary or (2) cultivate plants for medical use. While we discussed in *Hill* an officer's duty to consider "the plausibility of an innocent explanation," we also made it clear that "probable cause does not require an officer to rule out any innocent explanations for suspicious facts." *Hill*, 2020 IL 124595, ¶ 24. Here, there was no evidence that Trooper Wagand discovered any innocent explanation for the odor of raw cannabis. And based on *Hill*, he was not required to rule out the possibility of hypothetical innocent explanations before proceeding to search the vehicle Molina was in.

¶ 58 It should be noted that we reach the result in this case based on the stringent "odor-proof" container requirement in the Vehicle Code. See 625 ILCS 5/11-502.15(c) (West 2020). The only other place in our cannabis statutes where an "odor-proof" container is required is for entities packaging a product containing cannabis for sale. See 410 ILCS 705/55-21(c) (West 2020) ("Any product containing cannabis shall be packaged in a sealed, odor-proof, and child-resistant cannabis container consistent with current standards ***."). In other words, in order for a recreational user to possess cannabis in a motor vehicle on a highway, the user's possession of cannabis must comply with the same rigid standards required of those packaging cannabis products for sale.

¶ 59 It is the General Assembly that makes the laws and regulates the use and possession of cannabis. We are mindful that the legislature has considered

amending[7] the Vehicle Code, but it might also consider amending the Regulation Act, as both statutes govern how an individual may possess cannabis within a motor vehicle on an Illinois highway. Because both the Vehicle Code and Regulation Act regulate the possession of cannabis in a motor vehicle on a highway, consistency between the two laws is essential so users of cannabis know how to possess cannabis without violating the laws and so police officers know when they have probable cause to enforce the laws.

¶ 60                                      III. CONCLUSION

¶ 61        In sum, we hold that the odor of raw cannabis coming from a vehicle being operated on an Illinois highway, alone, is sufficient to provide police officers, who are trained and experienced in distinguishing between burnt and raw cannabis, with probable cause to perform a warrantless search of a vehicle. See *Hill*, 2020 IL 124595, ¶ 18 n.2 ("the smell and presence of cannabis undoubtedly remains a factor in a probable cause determination"). Our finding of probable cause is consistent with the Vehicle Code's odor-proof container requirement. In other words, an officer trained and experienced in distinguishing between burnt and raw cannabis who smells the odor of raw cannabis in a vehicle stopped on the highway would logically suspect that there is cannabis in the vehicle that is not properly contained as required by the Vehicle Code. See 625 ILCS 5/11-502.15(b), (c) (West 2020). Therefore, the circuit court erred when it granted the motion suppressing the raw cannabis confiscated from Molina. Accordingly, we affirm the appellate court's decision reversing the trial court's order suppressing the evidence seized in the warrantless search of Molina's car.

---

[7] We are mindful of pending legislation where (1) the Senate has proposed an amendment to section 11-502.15 of the Vehicle Code that would provide: "The odor of burnt or raw cannabis in a motor vehicle by itself shall not constitute probable cause for the search of a motor vehicle or person." 103d Ill. Gen. Assem., Senate Bill 125 2023 Sess. (introduced January 24, 2023, by Senator Rachel Ventura); and (2) the House has proposed an amendment eliminating the odor-proof container requirement from the Vehicle Code. 103d Ill. Gen. Assem., House Bill 1206, 2023 Sess. (introduced January 17, 2023, by Representative Curtis J. Tarver II).

¶ 62    Appellate court judgment affirmed.

¶ 63    Circuit court judgment reversed.

¶ 64    Cause remanded.


¶ 65    JUSTICE O'BRIEN, dissenting:

¶ 66    I agree with much of the analysis employed by the majority in tracking the evolution and statutory construction of cannabis law in Illinois. I disagree, however, that this analysis leads to the conclusion reached by the majority that, in this narrow context, the odor of raw cannabis should be distinguished from the odors of burnt cannabis or an alcoholic beverage. I dissent from the majority opinion simply to point out the absurdity of this inconsistency. It makes no sense to treat raw cannabis as more probative when the odor of burnt cannabis may suggest recent use, whereas the odor of raw cannabis does not suggest consumption. If the crime suggested by the odor of burnt cannabis is not sufficient for probable cause, then certainly the crime suggested by the odor of raw cannabis cannot be either. For the reasons that follow, I would find that the odor of raw cannabis coming from a vehicle, standing alone, does not give a police officer probable cause to conduct a warrantless search of the vehicle and would, therefore, reverse the judgment of the appellate court and affirm the circuit court's order granting defendant's motion to suppress.

¶ 67    As the majority acknowledges, in a case that was previously consolidated with the instant case, *People v. Redmond*, 2024 IL 129201, ¶ 47, we held that the odor of burnt cannabis, standing alone, was insufficient to provide probable cause for a warrantless search of a vehicle. We reached that conclusion after acknowledging that Illinois cannabis law has evolved and that the use and possession of cannabis has been legalized in numerous situations, so that "the smell resulting from that legal use and possession is not indicative of the commission of a criminal offense." *Id.* "[T]he odor of burnt cannabis in a motor vehicle, standing alone, is not a sufficiently inculpatory fact that reliably points to who used the cannabis, when the cannabis was used, or where the cannabis was used." *Id.* In reaching that conclusion, we compared the odor of burnt cannabis to the odor of alcohol and relied on the proposition that "more is needed to establish probable cause than the odor of alcohol." *Id.* ¶ 48.

¶ 68    Here, the appellate court below rejected the comparison to alcohol on the basis that alcohol is regulated differently than cannabis; specifically, there is no similar requirement in the Illinois Vehicle Code that alcohol be in an odor-proof container. 2022 IL App (4th) 220152, ¶ 51. However, the odor of alcohol emanating from a motor vehicle could indicate a violation of the Vehicle Code, such as driving while intoxicated or transporting alcohol with a broken seal. See 625 ILCS 5/11-501(a)(1) (West 2020) (illegal to drive or be in actual physical control of any vehicle while over the legal limit); *id.* § 11-502(a), (b) (illegal to transport alcohol in the passenger area of a vehicle, unless in the original container and with the seal unbroken). Even so, we have concluded that the odor of alcohol, absent any other factor, is insufficient to establish probable cause to search the vehicle. See *Redmond*, 2024 IL 129201, ¶ 48; see also *People v. Smith*, 95 Ill. 2d 412, 419 (1983) (probable cause was based on the odor of alcohol and the visible bottle of liquid that appeared to be beer); *People v. Gray*, 95 Ill. App. 3d 879, 882 (1981) (probable cause based on odor of alcohol plus observation of two open beer bottles); *People v. Corrigan*, 45 Ill. App. 3d 502, 505 (1977) (probable cause based on furtive movements, unusual liquid dripping from the glove compartment, and odor of alcohol).

¶ 69    In an attempt to explain why our approach to raw cannabis is different than our approach to alcohol or burnt cannabis, the majority distinguishes the odors of burnt cannabis and alcohol from the odor of raw cannabis on the basis that the former odors "strongly indicate that the substances have been or are being consumed" (*supra* ¶ 54), while the latter odor "strongly indicates the current presence of cannabis" (*supra* ¶ 55). The Vehicle Code prohibits not only the possession of cannabis in a vehicle unless it is in an odor-proof container but also prohibits the use of cannabis in any vehicle. 625 ILCS 5/11-502.1(b), (c); 11-502.15(b), (c) (West 2020). It defies logic to conclude that an odor that indicates consumption or use does not suggest the reasonable probability of a crime while an odor that indicates simply the transport of that same substance does.

¶ 70    Because a finding of probable cause requires facts that would warrant a reasonable person to believe there is a reasonable probability that certain items may be contraband or evidence of a crime, the odor of a legal substance alone is not sufficient. Although I agree with the majority's conclusion that the provisions of the Cannabis Regulation and Tax Act (410 ILCS 705/1-1 *et seq.* (West 2020)) and

- 19 -

the Vehicle Code (625 ILCS 5/11-502.1(a) (West 2020)) can be harmonized, requiring " 'that cannabis be stored in an odor-proof container during transport in a vehicle' " (*supra* ¶ 50 (quoting 2022 IL App (4th) 220152, ¶ 38)), the odor of cannabis alone would not warrant a reasonable person to believe there is criminal activity afoot. The relevant inquiry is the degree of suspicion that attaches to particular types of noncriminal acts. *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018). Because cannabis, both raw and burnt, is legal notwithstanding multiple restrictions, there is a low degree of suspicion that attaches to its odor. The majority opinion gives greater weight to the restrictions placed on the transportation of raw cannabis and in so doing elevates the suspicion that attaches to the odor of raw cannabis over that which attaches to the odor of alcohol or burnt cannabis. The result, whether intentional or not, is to continue to stigmatize the use of cannabis despite the legislative efforts to legalize the use of cannabis. Thus, I disagree with the majority's conclusion that the odor of raw cannabis emanating from defendant's vehicle, absent any other factors, is a suspicious fact that creates a "reasonable belief" or "fair probability" that raw cannabis was in the vehicle stored in a container that was not odor-proof. *Supra* ¶ 52.

¶ 71    The same " '[c]ountry common sense' " cited by the majority for the proposition that it is unlikely for a sober person to be consuming alcohol in a vehicle also dictates that the smell of raw cannabis signals only that the person, and/or his belongings, has recently come into contact with raw cannabis. See *supra* ¶ 54 (quoting *State v. Stevenson*, 321 P.3d 754, 763 (Kan. 2014)). Organic matter smells. That is a matter of common sense. It can easily permeate one's hair and clothing in a manner similar to a burnt compound of the same material. So, common sense would indicate that a sober person can come into contact with an alcoholic beverage through drinking it or having some spill on his clothing and that odor would remain with him for a period of time. The same is true of raw cannabis. A person coming into contact with raw cannabis, through touch or simple proximity, or possibly by opening and resealing the odor-proof container, would also carry that odor with him for a period of time even if the person did not possess the raw cannabis on his person or in his vehicle in violation of the odor-proof requirement. *Cf.* Marci J. Gracey, *Growing Pains: Using Racketeering Law to Protect Property Rights From State-Sanctioned Marijuana Operations*, 72 Okla. L. Rev. 441, 443 (2020) ("Descriptions of marijuana's pungent odor include phrases such as 'skunk-like'

and lemon-like odors mixed with sulfur. *** Growing or storing marijuana in large quantities magnifies the odor ***.").

¶ 72    We have concluded that neither the odor of alcohol nor the odor of burnt cannabis, absent any other factor, is sufficient to establish probable cause to search a vehicle. *Redmond*, 2024 IL 129201, ¶¶ 48, 54. We should reach the same conclusion as to raw cannabis: the odor of raw cannabis, absent any other factor, is not a sufficiently inculpatory fact that reliably points to when, where, or how the cannabis was possessed.

¶ 73    For these reasons, I dissent.

¶ 74    CHIEF JUSTICE THEIS joins in this dissent.

¶ 75    JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.