2025 IL App (2d) 240449-U
No. 2-24-0449
Order filed July 16, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-2086 |
| JESUS GARCIA, | ) ) ) | Honorable Clint Hull and David P. Kliment, |
| Defendant-Appellant. | ) | Judges, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's denial of defendant's motion to suppress as the police had reasonable cause to search his vehicle based on a trained dog's alert; the State proved defendant guilty beyond a reasonable doubt of unlawful possession of a firearm without a FOID card. Affirmed.

¶ 2    Following a bench trial, the trial court found defendant, Jesus Garcia, guilty of, *inter alia*, unlawful possession of a firearm without a Firearm Owner's Identification (FOID) card (430 ILCS 65/2(a)(1) (West 2022)) and sentenced him to three and one-half years' imprisonment (to be served at 50%). On appeal, defendant argues (1) the trial court erred in denying his motion to quash and suppress because the police lacked probable cause to search his vehicle based solely on the positive

alert from a trained police dog and (2) the State failed to prove beyond a reasonable doubt that he knowingly possessed a firearm found under the driver's seat of his car. For the reasons that follow, we affirm.

¶ 3                              I. BACKGROUND

¶ 4      Following a traffic stop and a subsequent search of his car on August 29, 2023, a grand jury indicted defendant on seven felony counts: (1) unlawful possession of a firearm by a street gang member (720 ILCS 5/24-1.8(a)(2) (West 2022)); (2) possession of a firearm while ineligible to possess a FOID card (430 ILCS 65/2(a)(1) (West 2022)); (3) aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2022)) an uncased, loaded, and immediately accessible firearm without a FOID card; (4) aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(3)(C)) possession of a firearm without a FOID card; (5) aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(3)(D)) possession of a firearm having been adjudicated a delinquent minor for an act that would be a felony if committed by an adult; (6) aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(3)(I) (West 2022)), possession of a firearm by a person under the age of 21; (7) unlawful possession of a firearm by a person under the age of 21 and previously adjudicated a delinquent (*id.* § 24-3.1(a)(2)).

¶ 5      In October 2023 defendant filed a motion to quash arrest and suppress evidence recovered as a result of the search.

¶ 6              A. Hearing on Motion to Quash Arrest and Suppress Evidence

¶ 7      In January 2024, the trial court, Judge Clint Hull, presiding, held a hearing on defendant's motion to quash arrest and suppress evidence. The following evidence was presented.

¶ 8      Elgin police detective Jonathan Taylor testified that at approximately 12:15 a.m. on August 29, 2023, he was on patrol in an unmarked squad car when he saw a red Toyota sedan in front of

him at a red traffic light. The intersection allowed only right or left turns, but the driver of the Toyota did not activate his turn signal. While waiting for the traffic light to change, Taylor ran the Toyota's license plate registration and learned that the owner of the vehicle was the 19-year-old defendant. Taylor knew defendant through previous Elgin police contacts involving burglary, "fleeing to elude," and gang membership. Taylor also reviewed defendant's "prior incidents" that included unlawful use of a weapon, unlawful possession of cannabis with intent to deliver, and burglary. Taylor called the K-9 unit to perform a "free-air sniff" of defendant's vehicle. After defendant turned without activating his turn signal, Taylor activated his emergency lights and defendant came to a stop. There were no passengers in defendant's vehicle. Defendant opened the center console and handed Taylor his registration, insurance, and driver's license without incident.

¶ 9    At approximately 12:17 a.m., Elgin police officer Chad Schuttrow had arrived with Rex, a dog that was trained to detect cannabis (both burnt and raw), cocaine, methamphetamine, and heroin. Schuttrow and Rex were trained and certified together by the State of Illinois narcotics team. Schuttrow asked defendant to exit his vehicle and defendant complied. Schuttrow did not smell or see any cannabis or see a firearm in defendant's vehicle. Schuttrow commanded Rex to conduct a free-air sniff and he walked Rex around defendant's vehicle. Rex scratched at the front driver's side door or window, indicating a positive alert.

¶ 10    Schuttrow then conducted a probable cause search of defendant's vehicle and located a partially sealed plastic bag in the driver's door pocket that contained "cannabis residue" and a black cylinder container that also contained "residual cannabis." When Schuttrow opened these items, he also saw "small bits [flakes] of [a] green leafy substance and [he] could also smell the odor of cannabis." Schuttrow then searched the driver's side area and looked beneath the driver's seat, where he found a firearm. The firearm was not visible until he looked under the driver's seat.

¶ 11    During cross-examination by the State, Taylor testified that after Rex alerted, Schuttrow gave a hand signal to indicate that a firearm was located inside defendant's vehicle. It was a loaded nine-millimeter handgun that was not in any type of case or covering. Without objection, Taylor also testified that both the plastic bag and the container found in the driver's door pocket contained "cannabis shake." Taylor testified that cannabis shake consists of "remnants of the cannabis flower that has fallen off. It's fresh, not burnt, cannabis prior to being smoked."

¶ 12    Taylor saw Schuttrow use a "five-four" hand signal to indicate that defendant was to be taken into custody. Defendant was arrested and transported to the Elgin police station. Taylor took the items recovered from defendant's vehicle to the special investigations group office and transferred them to evidence technician officer Lakysha Evans. Defendant told Taylor that the vehicle was registered and owned by him.

¶ 13    At the State's request, the trial court admitted Schuttrow's body camera video and still-frame photos into evidence. Defendant had stipulated to the foundation and admissibility of the video and photos. The State rested. Defendant moved for a directed finding, which the trial court denied.

¶ 14    On January 18, 2024, the trial court denied defendant's motion to quash arrest and suppress. In its written order the trial court stated:

> "Officer Schuttrow's K-9 alerted to the presence of contraband. That alert was sufficient to establish probable cause to search the vehicle. The search of the car resulted in Officer Schuttrow finding a partially sealed bag and black cylinder container both containing a small amount of cannabis. Officer Schuttrow continued his search by looking under the driver's seat where he found a firearm. Officer Schuttrow signaled to Officer Taylor he found a firearm and Defendant was placed under arrest.

THE COURT ORDERS: The Defendant has failed to meet [his] burden of proof and the motion to suppress the evidence is denied."

¶ 15                                    B. Bench Trial

¶ 16    A bench trial began on May 20, 2024, Judge David P. Kliment, presiding. Detective Taylor testified consistently with his testimony at the hearing on the motion to quash and suppress. In addition, Taylor testified that after Officer Schuttrow signaled that there was something illegal inside defendant's vehicle, Taylor looked directly underneath the driver's seat, where he saw a firearm positioned with the grip facing toward the front of the vehicle, "for like a reach-down motion." In March 2024 Taylor collected buccal swabs from defendant. He secured the swabs in an evidence envelope, transported them to the Elgin Police Department, processed them into the evidence department, and submitted an Illinois State Police Lab request form.

¶ 17    During cross-examination, Taylor stated that during the stop, defendant made no "furtive movements." Taylor also testified that when he asked defendant if there was anything illegal in his vehicle, defendant told him that his girlfriend, Leticia Ramirez, uses his vehicle, owns a firearm, and goes to the firing range.

¶ 18    Officer Schuttrow testified consistently with his testimony at the hearing on the motion to quash and suppress. Schuttrow also stated that during the search of defendant's vehicle he located a box of 9 mm ammunition in the center console.

¶ 19    The trial court admitted an Illinois Secretary of State driver's abstract for defendant that established defendant was 19 at the time of his arrest. The court also admitted photos of the butt of the handle of the firearm underneath defendant's driver's seat.

¶ 20    Elgin police officer Lakysha Evans testified that she received the firearm from Officer Taylor. Evans processed the firearm for DNA and fingerprints, swabbing the handle and charging

slide with two separate swabs. Evans placed the swabs in their original separate envelopes, secured and documented them, and then placed them into "our evidence lockers."

¶ 21    Illinois State Police forensic scientist Rachel Richetto testified that she conducted the lab work on the DNA swabs of the firearm's handle and charging slide, and defendant's buccal swabs. After Richetto completed the DNA analysis, she forwarded it to forensic scientist Blake Aper for interpretation.

¶ 22    Illinois State Police forensic scientist Blake Aper testified that the handle of the firearm contained a mixture of three people's DNA. Computer software analysis calculated that the likelihood ratio for the DNA mixture was 2.7 quintillion times more likely that it was a mixture of defendant and two unknown people, rather than three unknown people. Aper stated, "this likelihood ratio provides very strong support that [defendant] is a contributor to this mixture." Aper also explained that the software determined that "contributor one was there at 63 percent, contributor two, 29 percent, and contributor three, 8 percent." Defendant's DNA aligned more "with the 29 percent contributor." During cross-examination, Aper testified that "the 63 percent contributor could be a female."

¶ 23    John Strode, supervisor of the FOID card and concealed carry license application processing unit of the Illinois State Police firearm Services Bureau, testified that there was no record on file for the issuance of a FOID card or a conceal and carry license to defendant.

¶ 24    The State rested. Defendant moved for a directed finding, which the trial court denied.

¶ 25    Leticia Ramirez, defendant's girlfriend and mother of his child, testified that she had a vehicle that was unreliable, and she drove defendant's vehicle. Ramirez had a FOID card, and she owned the firearm and the ammunition found in defendant's vehicle. She left it under the driver's seat after going to the firing range. Ramirez did not tell defendant that the firearm was in his

vehicle.

¶ 26    During cross-examination, Ramirez testified that defendant had never touched her firearm. Ramirez knew that she had left her firearm in defendant's vehicle and that he was not allowed to possess a firearm. Ramirez spoke with the police at the scene of the traffic stop but she did not tell them that she left a firearm in defendant's vehicle. After defendant's arrest, Ramirez never told police or anyone in the state's attorney's office that the firearm found in defendant's vehicle belonged to her. Ramirez originally bought the firearm to protect herself and her child. After defendant was arrested and Ramirez did not have access to her firearm, she did not purchase another one.

¶ 27    Following closing arguments, the trial court found defendant guilty of counts two through seven. In so finding, the court stated the following:

> "This is really a one-issue case, and that is whether or not the defendant knowingly possessed a handgun. There's no question that he was ineligible for several reasons not to possess it, including his age, the juvenile adjudication. We know that he should not have been in possession of a firearm.
>
> But he was in possession of a firearm in the vehicle, but was that knowingly possessed, and did the State prove that beyond a reasonable doubt?
>
> This is mostly circumstantial evidence here. There's obviously no direct evidence that the defendant knew the gun was in the car, so you have to look at the circumstantial evidence.
>
> First, with respect to the testimony of Ms. Ramirez, I find it incredible that she carried the gun around uncased from car to car and stuck it under the seats of the different cars she was driving for safety purposes, particularly in light of the fact that she was doing

so, according to her testimony, to keep herself and her child safe.

* * *

It's also incredible to me that Ms. Ramirez would go to the scene where Mr. Garcia is being arrested and say nothing about the fact that the gun in the car is mine. If that's why you're arresting him, it's mine. That just simply defies logic.

I also believe that there's no question at all that Mr. Garcia handled that firearm. 2.7 quintillion was the number that the DNA expert gave. So I believe the State has proved beyond a reasonable doubt that the defendant knowingly possessed this firearm and that all of the other elements are really not in question in terms of his ineligibility for a FOID card, the fact that he didn't have a FOID or CCL and so forth. So the defendant will be found guilty of Counts 2 through 7 of the indictment."

¶ 28    Defendant's motion for a new trial was heard and denied. The trial court sentenced defendant to three and one-half years' imprisonment on Count two only: the remaining counts merged into that count. Defendant timely appealed.

¶ 29                                II. ANALYSIS

¶ 30    Defendant raises two major contentions on appeal, one related to his motion to quash arrest and suppress evidence and the other related to sufficiency of the evidence. We address each in turn.

¶ 31                            A. Motion to Suppress

¶ 32    Defendant first argues that the police lacked probable cause to search his vehicle based solely on the positive alert of a police dog that was trained to detect cannabis. Defendant maintains that such an alert was insufficient to provide probable cause because cannabis laws have changed such that the alert was just as likely to have indicated legal activity. Although defendant does not

directly invoke it, he seems to rely on the exclusionary rule. The exclusionary rule may be invoked by the victim of an unlawful search when the State seeks to introduce evidence uncovered by an unlawful search. *People v. Hagestedt*, 2025 IL 130238, ¶ 45. "Under the 'fruit of the poisonous tree' doctrine, a fourth amendment violation is the poisonous tree, and any evidence obtained as a result of that violation is the fruit." *Id.* (citing *People v. Henderson*, 2013 IL 114040, ¶ 33).

¶ 33    We review a trial court's ruling on a motion to suppress, under the two-part standard articulated by the United States Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 696-97, (1996). The trial court's factual findings will be reversed only if they are against the manifest weight of the evidence. However, we review *de novo* the ultimate legal determination as to whether suppression was warranted. *Id.*

¶ 34    Our state constitution and the federal constitution protect against unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Generally, where a search is conducted without a warrant supported by probable cause and approved by a judge or magistrate, it is *per se* unreasonable. *People v. Webb*, 2023 IL 128957, ¶ 24. However, there are exceptions to the general rule, including an exception for searches of vehicles. *Id.* A warrantless search of an automobile is one such exception, due to its transient nature and the challenge of obtaining a warrant before the vehicle escapes the jurisdiction. *People v. Hill*, 2020 IL 124595, ¶ 21. Without a search warrant, probable cause is required to conduct a search of a vehicle. *Id.* ¶ 22. "Probable cause to search a vehicle exists when, based on the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Sands*, 815 F. 3d 1057, 1063 (7th Cir. 2015) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *People v. Redmond*, 2024 IL 129201, ¶ 26.

¶ 35    A trained drug-detection dog's alert on a vehicle is an acceptable method to establish

probable cause. *Webb*, 2023 IL 128957, ¶ 15; *People v. Campbell*, 67 Ill. 3d 308, 315-16 (1977). The ultimate question is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test." *Florida v. Harris*, 568 U.S. 237, 248 (2013).

¶ 36    Defendant maintains that Rex's alert was insufficient to provide probable cause because the dog was trained to detect cannabis, regardless of its legality. Defendant cites *Redmond*, 2024 IL 129201, to support his argument. In *Redmond*, our supreme court held that while it may provide an officer a reasonable suspicion to investigate further, "the odor of *burnt* cannabis, alone, is *insufficient* to provide probable cause for police officers to perform a warrantless search of a vehicle." (Emphasis added) *Id.* ¶ 66.

¶ 37    In response, the State cites *People v. Molina*, 2024 IL 129237, where the court held that the odor of *raw* cannabis detected by a police officer, alone, is *sufficient* to provide probable cause for a warrantless search of a vehicle. *Id.* ¶ 61. The court explained that while Illinois has legalized marijuana for recreational use in some circumstances, it still has laws restricting the packaging and use of marijuana. For example, the Illinois Vehicle Code prohibits the possession of cannabis in a motor vehicle unless it is stored in a "sealed, odor-proof, child-resistant cannabis container." *Id.* ¶ 45 (quoting 625 ILCS 5/11-502.15(b), (c) (West 2020)). The court then reasoned that "when the odor of raw cannabis comes from a vehicle driven on an Illinois highway, it is almost certain that the cannabis is being possessed in violation of the Vehicle Code's odor-proof container requirement." *Id.* ¶ 55. Thus, the court held, "the odor of raw cannabis coming from a vehicle being operated on an Illinois highway, alone, is sufficient to provide police officers, who are trained and experienced in distinguishing between burnt and raw cannabis, with probable cause to

perform a warrantless search of a vehicle." *Id.* ¶ 61.

¶ 38    We note that, here, defendant could not lawfully possess any cannabis because he was "under 21 years of age." 410 ILCS 705/10-5 (West 2022); 720 ILCS 555/4 (West 2022); *Molina*, 2024 IL 129237, ¶ 37.  It is undisputed that Rex was trained to detect and alert on cannabis (both burnt and raw), heroin, methamphetamine, and cocaine. Therefore, Rex's alert at the driver's door gave rise to more than a " 'fair probability that contraband [would] be found.' " *Molina*, 2024 IL 12937, ¶ 22 (quoting *Gates*, 462 U.S. at 238). Defendant presented no evidence that when Rex alerts, he is most likely detecting *burnt* cannabis as opposed to one of the illegal items on his olfaction palate. Indeed, officers found *raw* cannabis in the driver's door pocket, in the vicinity where Rex alerted.

¶ 39    Further, the record indicates that the totality of the facts and circumstances known to the officers at the time of the search, which were indicative of drug activity, included more than just the Rex's positive alert. Specifically, Taylor testified at the suppression hearing that he knew that defendant was a gang member and had "prior incidents *** for unlawful use of a weapon, unlawful possession of cannabis with intent to deliver, burglary." Such circumstances provided additional support for the vehicle search.

¶ 40    Therefore, we accept the trial court's finding that the dog's alert gave the officers probable cause to search defendant's vehicle. See *Harris*, 568 U.S. at 246-47. Accordingly, we reject defendant's arguments on appeal and hold that the trial court did not err when it denied his motion to quash arrest and suppress evidence.

¶ 41                              B. Sufficiency of the Evidence

¶ 42    Next, defendant contends that the State failed to prove beyond a reasonable doubt that he committed the offense of unlawful possession of a firearm without a FOID card (430 ILCS

65/2(a)(1) (West 2022)). Specifically, he maintains that the State did not prove that he had knowledge of the firearm found under his driver's seat.

¶ 43    In reviewing the sufficiency of the evidence, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard applies whether the evidence is direct or circumstantial and does not allow a reviewing court to substitute its judgment for that of the fact finder on issues involving witness credibility and the weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). We will not retry a defendant, and on review, we must draw all reasonable inferences from the evidence in favor of the State. *People v. Jones*, 2023 IL 127810, ¶ 28. Ultimately, we reverse a defendant's conviction based upon insufficient evidence only when the evidence is so unreasonable, improbable, or unsatisfactory that there is reasonable doubt as to his guilt. *Id.*

¶ 44    The State establishes a violation of section 2(a)(1) of the FOID Act by demonstrating that (1) the defendant knowingly possessed a firearm and (2) knew he did not have a valid FOID card. *People v. Shelly*, 2024 IL App (3d) 220432, ¶¶ 26-27, 29.

¶ 45    Here, there is no dispute that a firearm was found in a car that defendant owned and was driving at the time. It is undisputed that defendant did not possess, and could not lawfully possess, a valid FOID card. The only element of the offense that defendant disputes on appeal is whether he *knowingly* possessed the firearm.

¶ 46    Because the firearm was not found on defendant's person, constructive possession, as opposed to actual possession, is at issue. Constructive possession exists where a defendant has knowledge of the presence of the contraband and exercises immediate and exclusive control over

the location where it was found. *Jones*, 2023 IL 127810, ¶ 28. A defendant's proximity to contraband is a factor courts have found relevant when determining constructive possession. *People v. Wise*, 2021 IL 125392, ¶ 29. Further, proof that a defendant had control over the premises where contraband is located gives rise to an inference of knowledge and possession of that contraband. *Jones*, 2023 IL 127810, ¶ 30.

¶ 47    We determine that a rational trier of fact could have found defendant had control over the premises where the firearm was located. The evidence showed that defendant was the owner of the vehicle and the only occupant at the time of the stop. The firearm was found directly under defendant's seat. Viewing the evidence in the light most favorable to the State, this evidence was sufficient for the trier of fact to reasonably infer that defendant had constructive possession of the firearm.

¶ 48    Further, we determine that a rational trier of fact could find that defendant had knowledge of the firearm. "Knowledge of a material fact includes awareness of the substantial probability that the fact exists." 720 ILCS 5/4-5 (West 2022). Where possession has been shown, knowledge can be inferred from the surrounding facts and circumstances. *Jones*, 2023 IL 127810, ¶ 34. "Knowledge is often proven with circumstantial evidence [citation], and at least in some settings, knowledge may be established with reference to what a reasonable person would know under the circumstances [citation]." *People v. Purta*, 2023 IL App (2d) 220169, ¶ 21.

¶ 49    The evidence concerning defendant's knowledge, while circumstantial, was not lacking. There is no dispute that defendant owned the vehicle, he drove it alone, and the uncased and loaded firearm was directly under his driver's seat. Moreover, defendant's DNA was found on the firearm. Further, when Officer Taylor asked defendant if there was anything illegal in his vehicle, defendant responded that his girlfriend owned a firearm and used his vehicle to go the firing range. While

Ramirez testified that defendant did not know the firearm was in his vehicle, the trial court found her testimony incredible. We defer to the trial court's assessment of the witness's credibility. *People v. Swenson*, 2020 IL 124688, ¶ 36. Viewing the evidence in the light most favorable to the State, this evidence was sufficient for the trier of fact to reasonably infer that defendant knew of and thus had constructive possession of the firearm found under his driver's seat.

¶ 50    In reaching this conclusion, we are unpersuaded by defendant's reliance on *People v. Bailey*, where the police found a firearm, that the defendant did not own, underneath the passenger seat where he was seated and the State failed to establish any connection or relationship between the defendant and the owner of the gun or the owner of the car. *People v. Bailey*, 333 Ill. App. 3d 888, 892 (2002). In contrast to *Bailey*, here, defendant was connected to both the vehicle and the firearm. Defendant owned the vehicle, his girlfriend owned the firearm and she used his vehicle to go to the firing range. Also, unlike *Bailey*, defendant was alone in the vehicle when the firearm was found. Therefore, *Bailey* is distinguishable from this case.

¶ 51                                    III. CONCLUSION

¶ 52    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 53    Affirmed.