NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250430-U

NO. 4-25-0430

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 26, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| VICTOR A. HERNANDEZ-MANZO, | ) | No. 23CF623 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Christopher R. Doscotch, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Doherty and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, holding (1) the trial court did not err in denying defendant's motion to suppress evidence because the officer had probable cause to search the vehicle and (2) the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of unlawful possession of a controlled substance and aggravated unlawful use of a weapon.

¶ 2    Following a traffic stop, defendant, Victor A. Hernandez-Manzo, was charged with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2022)) and aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1) (West 2022)). Defendant filed a motion to suppress evidence, alleging the vehicle he was driving was searched in violation of the fourth amendment of the United States Constitution (U.S. Const., amend. IV). The trial court denied the motion. After a stipulated bench trial, defendant was convicted on all counts and sentenced to 24 months' probation.

¶ 3    Defendant appeals, arguing (1) the trial court erroneously denied his motion to

suppress evidence and (2) the State failed to prove him guilty beyond a reasonable doubt. For the following reasons, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5        In September 2023, a grand jury indicted defendant on one count of unlawful possession of a controlled substance (less than 15 grams of a substance containing cocaine) (720 ILCS 570/402(c) (West 2022)) and one count of AUUW (720 ILCS 5/24-1.6(a)(1) (West 2022)). The charges stemmed from a traffic stop occurring the month prior.

¶ 6                            A. Motion to Suppress Evidence

¶ 7        In October 2023, defendant filed a motion to suppress the evidence recovered during a warrantless search of his vehicle, alleging the vehicle he was driving was searched in violation of the protections afforded to him by the fourth amendment.

¶ 8        In March 2024, the trial court held a hearing on the motion. The parties stipulated to the admission of the video from the arresting officer's body-worn camera. The following evidence was adduced at the hearing.

¶ 9        Devon Mathis, a North Pekin Police Department officer, testified on August 27, 2023, he conducted a traffic stop after observing a brown Chevrolet Silverado truck traveling 66 miles per hour in a 45 miles per hour zone. Defendant was the driver and Alejandro was sitting in the front passenger seat. Mathis testified he smelled raw cannabis before approaching the vehicle and before defendant rolled down his window. Mathis testified he understood the difference between the smell of burnt and raw cannabis. He explained he did not distinguish whether he smelled raw or burnt cannabis in the video or his written report because he believed both odors were sufficient to provide probable cause. See *People v. Redmond*, 2024 IL 129201, ¶ 54 (holding the smell of burnt cannabis cannot establish probable cause for warrantless

searches of vehicles occurring on or after January 1, 2020). Mathis approached the truck and asked defendant to step out of the vehicle. The following exchange occurred while Mathis and defendant were standing at the rear of the truck:

"MATHIS: Can you send me another unit please? Alright, so real quick, there's a strong *** smell of weed in the car. How much is in there?

DEFENDANT: I just smoked this morning, sir.

MATHIS: You just smoked?

***

DEFENDANT: Right.

MATHIS: Do you have anything in the car?

DEFENDANT: Uh, just—

MATHIS: If it's just a little bit of weed, man, I'm not worried about it.

DEFENDANT: Yeah, yeah, you ain't gonna find nothing.

MATHIS: So, if—

DEFENDANT: But *** it's legal in Illinois, so—

MATHIS: Well, it's *** not legal to transport it, and—

DEFENDANT: I'm not transporting anything. That's what I'm saying. You're smelling me because I smoked this morning.

MATHIS: Okay."

¶ 10　　　　A second officer arrived at the scene. Mathis asked defendant if he could retrieve defendant's identification (ID) from the vehicle. Defendant acquiesced, stating, "No problem, officer. *** Back seat, *** it should be [in] a black Nike duffel bag, and it'll be in the front pocket. You can search whatever you need." While standing at the rear of the truck, the other

- 3 -

officer indicated he could smell cannabis. Mathis searched behind the driver's seat and did not find the black Nike bag or defendant's ID.

¶ 11 Mathis returned to defendant and asked if the black Nike bag might be located in the passenger seat. Defendant replied, "Could you check the passenger's seat then?" He reiterated, "[I]t's in the black bag." Mathis searched the front passenger seat and did not find the black Nike bag or defendant's ID. However, after opening the lower center console, he discovered a Ruger 5.7x28-caliber pistol and a loaded cartridge case. Mathis asked defendant who owned the handgun. Defendant replied, "What handgun?" He denied knowing who owned the gun. He also stated he did not know Alejandro to have a gun.

¶ 12 Mathis continued his search, moving to the right side of the back seat area. In the pouch located on the back of the front passenger seat, Mathis found a plastic baggie with a small amount of raw cannabis and another plastic baggie containing a white, powdery substance later determined to be 0.1 gram of cocaine. On the floor of the truck directly underneath the pouch was the black Nike bag. Mathis searched the bag and found defendant's ID and a scale. Following the argument of the parties, the trial court took the matter under advisement.

¶ 13 The trial court subsequently entered a written order denying defendant's motion to suppress. The court found Mathis's testimony he smelled raw cannabis credible, explaining,

"Upon walking up [to] the driver's door, Officer Mathis, testified he smelled the strong odor of cannabis. This testimony is corroborated by the body camera footage and Officer Mathis's comments during the stop. Officer Mathis clearly stated to defendant and passenger that he smelled a strong odor of cannabis. Officer Mathis indicated he smelled the cannabis odor prior to the [ID] search request.

According to Officer Mathis, he could smell the cannabis before defendant lowered his window. The court questions the officer's ability to smell a strong cannabis odor prior to the window being lowered.

* * *

Prior to finding the cannabis, Officer Mathis asked defendant, 'how much is in there' and how was defendant transporting it (cannabis). The context of these questions is more consistent with the Officer suspecting raw cannabis. If looking for used cannabis, it would be unusual to ask how a defendant was transporting a joint or one-hitter. The nature of these questions supports Mathis's testimony that he smelled raw cannabis."

¶ 14 The trial court acknowledged defendant indicated the odor Mathis smelled was burnt cannabis and he informed Mathis he had smoked earlier in the day. The court noted no evidence of burnt cannabis was found during the search.

¶ 15 The trial court also found defendant consented to Mathis's search of the truck.

¶ 16 B. Stipulated Bench Trial

¶ 17 In August 2024, the trial court conducted a stipulated bench trial. The State submitted the video from Mathis's body-worn camera. The parties stipulated to the following evidence: In August 2023, Mathis conducted a traffic stop of a truck for speeding. Defendant was the owner and driver of the truck. Alejandro, the only passenger, was sitting in the front passenger seat. Defendant did not have a currently valid firearm owner's identification (FOID) card (see 430 ILCS 65/2(a)(1) (West 2022)). During the search of the vehicle, Mathis found a Ruger 5.7x28-caliber pistol and a loaded cartridge case in the lower compartment of the front center console. Defendant told Mathis he did not know Alejandro to have a gun. Mathis also

located a plastic baggie containing 0.1 gram of cocaine in the storage pouch located on the back of the front passenger seat. Following the argument of the parties, the trial court took the matter under advisement.

¶ 18    In January 2025, the trial court found defendant guilty on both counts. In its written order, the court made, in relevant part, the following findings of fact: (1) defendant did not have a currently valid FOID card, (2) defendant was the driver and registered owner of the truck, (3) the gun was found in the lower center console and immediately accessible by defendant, (4) there was one passenger in the truck, and (5) defendant told Mathis he did not know his passenger to have a gun.

¶ 19    This appeal followed.

¶ 20    II. ANALYSIS

¶ 21    On appeal, defendant argues (1) the trial court erred in denying his motion to suppress evidence and (2) the evidence was insufficient to prove him guilty beyond a reasonable doubt of possession of a controlled substance and AUUW.

¶ 22    A. Motion to Suppress Evidence

¶ 23    Defendant contends the trial court erred in denying his motion to suppress evidence where (1) Mathis lacked probable cause to search the vehicle and (2) his search exceeded the scope of defendant's limited consent.

¶ 24    In reviewing a trial court's ruling on a motion to suppress, this court applies a two-tiered standard of review. *People v. Molina*, 2024 IL 129237, ¶ 17. The trial court's factual findings are reviewed under a manifest weight of the evidence standard, whereas the court's ultimate legal ruling is reviewed *de novo*. *Id.* "A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or if the finding itself is unreasonable,

arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.) *People v. Dunmire*, 2019 IL App (4th) 190316, ¶ 35. Great deference is afforded to the court's factual findings and credibility determinations, as it is in a better position "to observe witness demeanor, resolve conflicts in the testimony, and weigh the credibility of witnesses." *People v. Litwin*, 2015 IL App (3d) 140429, ¶ 39.

¶ 25        The fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 6) guarantee the right of individuals to be free from unreasonable searches and seizures. Warrantless searches are *per se* unreasonable under the fourth amendment. *Molina*, 2024 IL 129237, ¶ 19 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). There are, however, a few well-established exceptions to this rule, including the search of automobiles supported by probable cause. *Redmond*, 2024 IL 129201, ¶ 24.

¶ 26        Probable cause to conduct a warrantless search of a vehicle exists when "the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity." (Internal quotation marks omitted.) *People v. Sims*, 2022 IL App (2d) 200391, ¶ 74. The probable-cause analysis " 'is governed by commonsense considerations that are factual and practical, rather than by technical rules.' " *Redmond*, 2024 IL 129201, ¶ 26 (quoting *People v. Manzo*, 2018 IL 122761, ¶ 30). "A court must examine the events leading up to the search or seizure, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable law enforcement officer, amount to probable cause." *People v. Jones*, 215 Ill. 2d 261, 274 (2005).

¶ 27        Our supreme court recently clarified the distinction between the odor of raw and

burnt cannabis when determining whether an officer has probable cause to search a vehicle. "[T]he odor of raw cannabis coming from a vehicle being operated on an Illinois highway, alone, is sufficient to provide police officers, who are trained and experienced in distinguishing between burnt and raw cannabis, with probable cause to perform a warrantless search of a vehicle." *Molina*, 2024 IL 129237, ¶ 61. On the other hand, the smell of burnt cannabis, alone, is insufficient to establish probable cause. *Redmond*, 2024 IL 129201, ¶ 66. "Whether probable cause to search exists is a factual inquiry and the trial court's determination on this issue will not be overturned unless it is against the manifest weight of the evidence." (Internal quotation marks omitted.) *People v. Ivanchuk*, 2025 IL App (4th) 241230, ¶ 73.

¶ 28　　　　Defendant maintains the evidence recovered from the truck should have been suppressed because the search of the vehicle was not supported by probable cause. Specifically, he asserts Mathis's testimony he smelled raw cannabis emanating from the vehicle was not credible and the trial court's decision to believe his testimony was against the manifest weight of the evidence.

¶ 29　　　　In this case, the trial court found Mathis had probable cause to search defendant's truck because he detected the odor of raw cannabis upon his initial approach of the truck. The court based its decision upon finding Mathis (1) clearly stated to defendant and his passenger he smelled cannabis prior to asking if he could search the truck for defendant's ID, (2) asked defendant questions consistent with suspecting the presence of raw cannabis, and (3) found no evidence of burnt cannabis during the search. The court noted defendant indicated to Mathis the odor was burnt cannabis and he had smoked cannabis earlier in the day.

¶ 30　　　　Defendant contends the trial court's finding that Mathis smelled only the odor of raw cannabis was unreasonable, as the evidence instead supports a finding he smelled burnt

cannabis. We disagree. In the video and the police report, Mathis indicated he detected the strong odor of cannabis in the vehicle but never explicitly stated whether it was raw or burnt cannabis. At the suppression hearing, Mathis clarified he smelled only raw cannabis. As the court observed in its order denying the motion to suppress, Mathis's questions and statements during the traffic stop were consistent with smelling raw cannabis. Mathis asked defendant, "How much is in there?" He also informed defendant it was illegal to transport cannabis. The trier of fact could reasonably infer from the context of these statements that Mathis was referring to raw cannabis, as one does not typically transport burnt cannabis. Had Mathis smelled burnt cannabis, his questions would instead focus on how much or when defendant last smoked or whether there was used smoking paraphernalia in the vehicle.

¶ 31       To the extent defendant highlights the implausibility of Mathis's testimony regarding whether he could smell raw cannabis prior to approaching the truck and defendant rolling down his window, the trial court, having observed Mathis testify, was in a superior position to weigh the credibility of his testimony. See *Litwin*, 2015 IL App (3d) 140429, ¶ 39.

> "[E]ven when a witness is found to have knowingly given false testimony on a material point, a fact finder may reject his entire testimony but is not bound to do so. [Citations.] In other words, it is for the fact finder to judge how flaws in part of the testimony affect the credibility of the whole." *People v. Cunningham*, 212 Ill. 2d 274, 283 (2004).

In its written order, the court acknowledged the questionability of Mathis's testimony on this point but ultimately determined the totality of the circumstances supported that he smelled raw cannabis once defendant lowered his window. We cannot say this finding was unreasonable or not based on the evidence presented.

¶ 32　　　　Relying on *Litwin*, defendant argues the evidence showed Mathis did not smell raw cannabis upon approaching the vehicle because he still asked for defendant's consent to search the truck. In *Litwin*, the reviewing court held the trial court erred in denying the defendant's motion to suppress evidence. *Litwin*, 2015 IL App (3d) 140429, ¶ 44. There, an officer initiated a traffic stop of the defendant for improper lane usage. *Id.* ¶ 4. The officer smelled cannabis emanating from the vehicle but did not mention the odor until after he asked the defendant for consent to search the vehicle. *Id.* In assessing the trial court's finding the officer was credible, the reviewing court observed it "belie[d] common sense" for the officer to ask the defendant for consent to search, as the odor of cannabis gave him probable cause to search the vehicle. *Id.* ¶ 40. Moreover, there were other significant factors undermining the officer's credibility, including: (1) a second officer did not smell cannabis in the vehicle, (2) a drug dog did not alert when conducting a sniff test, (3) inconsistencies in the officer's testimony between two separate suppression hearings and between his testimony and his police report, and (4) unrebutted expert testimony the video of the stop had been maliciously altered. *Id.* ¶¶ 41-43. The *Litwin* court held, under the totality of the circumstances, the trial court's finding that the officer was credible was against the manifest weight of the evidence. *Id.* ¶ 44.

¶ 33　　　　Defendant asserts Mathis's testimony he smelled raw cannabis before approaching the truck was incredible because, like the officer in *Litwin*, Mathis still asked defendant for consent to search the truck. However, a litany of other factors supported suppression in *Litwin* that are not present here, including a second officer never smelling cannabis, a failed drug dog sniff test, and potential misconduct. Moreover, to the extent *Litwin* held it necessarily "belies common sense" to ask for consent to search after probable cause is established, we disagree. *Id.* ¶ 40. An officer's interactions with a defendant must be assessed

within the context of the individual circumstances of the traffic stop. For example, at the suppression hearing, Mathis testified he was trying to build a conciliatory rapport with defendant to elicit cooperation and gather information. To maintain this rapport, Mathis asked defendant questions in a polite and nonconfrontational manner, including whether he could retrieve defendant's ID from the truck. This approach is consistent with Mathis's purpose of eliciting cooperation and gathering information from defendant during the traffic stop. We find *Litwin* does not support defendant's position in this case.

¶ 34      In sum, we find the trial court's factual findings and credibility determinations were not against the manifest weight of the evidence. Accordingly, based on the totality of the circumstances presented, we conclude there was probable cause to believe the truck contained improperly transported cannabis, thus justifying a warrantless search of the truck. See 625 ILCS 5/11-502.15(b) (West 2022) (prohibiting the possession of cannabis in a moving vehicle unless it is secured in a sealed, odor-proof, child-resistant container); *Molina*, 2024 IL 129237, ¶ 61.

¶ 35      Because we have determined Mathis had probable cause to search the vehicle, we need not address defendant's argument the search of the vehicle exceeded the scope of his limited consent.

¶ 36                    B. Sufficiency of the Evidence

¶ 37      Defendant argues the State failed to prove him guilty beyond a reasonable doubt of possession of a controlled substance and AUUW because the evidence was insufficient to prove he had constructive possession of the cocaine and gun recovered from the truck.

¶ 38      Where the sufficiency of the evidence is challenged, the question on appeal is whether any rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt.

*People v. Jones*, 2023 IL 127810, ¶ 28. "It is not the purpose of a reviewing court to retry a defendant." *People v. Bogan*, 2017 IL App (3d) 150156, ¶ 26. A reviewing court will not substitute its judgment for that of the trier of fact on issues involving "[t]he credibility of the witnesses, the weight to be given [to] their testimony, and the resolution of any conflicts in the evidence." *People v. Rios*, 2022 IL App (1st) 171509, ¶ 48. We will reverse a conviction only if the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Wise*, 2021 IL 125392, ¶ 27.

¶ 39    To prove defendant guilty of possession of a controlled substance, the State had to show he knowingly possessed 15 grams or less of cocaine. 720 ILCS 570/402(c) (West 2022). To prove defendant guilty of AUUW, the State had to show (1) he knowingly carried a firearm in his vehicle and (2) either (i) the pistol, revolver, or handgun was uncased and unloaded, the ammunition for the weapon was immediately accessible, and he did not have a currently valid concealed carry license or (ii) he had not been issued a currently valid FOID card. 720 ILCS 5/24-1.6(a)(1) (West 2022).

¶ 40    Defendant disputes only whether the State proved possession for both counts. "Where possession is an element of a charged offense, and a defendant is not found in actual possession, the State must instead prove constructive possession." *Bogan*, 2017 IL App (3d) 150156, ¶ 27. To prove constructive possession of contraband, the State must show the defendant had (1) knowledge of the presence of the contraband and (2) immediate and exclusive control over the area where the contraband was found. *People v. Bailey*, 333 Ill. App. 3d 888, 891 (2002). Whether there is control or knowledge is a factual question for the trier of fact to determine. *People v. Schmalz*, 194 Ill. 2d 75, 81 (2000).

¶ 41    "[O]ne's knowledge of contraband may be, at least in part, inferred from one's

control over the area in which the contraband is found. Control, on the other hand, may not be inferred from knowledge." *Bogan*, 2017 IL App (3d) 150156, ¶ 29. Accordingly, we first address the second element of constructive possession—whether defendant exercised immediate and exclusive control over the area where the contraband was found.

¶ 42 Viewed in the light most favorable to the State, there was sufficient evidence for a rational trier of fact to find defendant had immediate and exclusive control over the inside of the truck where the contraband was recovered. Defendant was both the driver and owner of the truck—facts which support an inference of control. See *id.* ¶ 32 (noting a defendant's ownership of a vehicle is highly relevant to, but not dispositive of, the element of control); *People v. McNeely*, 99 Ill. App. 3d 1021, 1025 (1981) (finding control where the defendant was the driver, but not the owner, of the vehicle). Defendant's proximity to the contraband also supports an inference of control. See *Wise*, 2021 IL 125392, ¶ 29. From the driver's seat, defendant was immediately next to the lower center console where the gun was found. He could also easily access the cocaine by reaching behind the front passenger seat into the back pouch where the baggie was located.

¶ 43 Defendant nevertheless argues the State failed to establish control due to Alejandro having equal or greater access to the areas where the contraband was found. However, the fact Alejandro also had access to the contraband does not defeat a finding that defendant possessed the contraband. "The rule that possession must be exclusive does not mean that the possession may not be joint [citation]; if two or more persons share immediate and exclusive control or share the intention and power to exercise control, then each has possession." *Schmalz*, 194 Ill. 2d at 82. "To hold otherwise would enable persons to escape criminal liability for possession of contraband by the simple expediency of inviting others to participate in the

criminal enterprise." (Internal quotation marks omitted.) *People v. Hill*, 226 Ill. App. 3d 670, 673 (1992). Thus, Alejandro's shared access to the contraband does not prevent defendant's constructive possession of the contraband.

¶ 44        Defendant cites *Wise* and *McIntyre* for the related proposition that " 'a defendant's status as owner-driver of the vehicle does not put him into possession of everything within the passenger area when there are passengers present who may, in fact, be the ones in possession of the contraband.' " *Wise*, 2021 IL 125392, ¶ 28 (quoting *People v. McIntyre*, 2011 IL App (2d) 100889, ¶ 17). We find the cases factually distinguishable. In both cases, the contraband at issue was located (1) out of arm's reach of the defendant and (2) closer to another passenger in the vehicle. See *id.* ¶ 34 (finding no control where the gun was 5 to 10 feet away from the defendant-driver and closest to the passenger in the third-row seat); *McIntyre*, 2011 IL App (2d) 100889, ¶ 18 (finding no control where the defendant was the driver and the gun was found underneath the front-seat passenger in an opening between the plastic base and leather portion of the front-passenger seat on the side closest to the front-passenger door). Unlike *Wise* and *McIntyre*, neither the gun nor the cocaine was found wholly within the area of another passenger, and both items were accessible from the driver's seat. The gun was in the lower center console, a place defendant and his passenger had equal access to. The cocaine was found in the pouch on the passenger side of the back seat, and no back seat passengers were present. Furthermore, both defendant and the front-seat passenger had access to the pouch, as defendant could have easily reached over the center console into the pouch, while the passenger could have turned around in his seat and then reached behind his seat into the pouch. As such, we find defendant's reliance on *Wise* and *McIntyre* unavailing.

¶ 45        We next address whether the State sufficiently proved the other element of

constructive possession—whether defendant knew the contraband was in the truck. "A defendant's mere presence in a car, without more, is not evidence that he knows a weapon is in the car." *Bailey*, 333 Ill. App. 3d at 891. However, "knowledge may often be inferred from one's control over an area." *Bogan*, 2017 IL App (3d) 150156, ¶ 45. An inference of knowledge arises when the contraband (1) is found in a place where the defendant has "regular, ongoing control" and (2) is "an item that human experience teaches is rarely, if ever, found unaccountably in such a place." *People v. Hampton*, 358 Ill. App. 3d 1029, 1032 (2005).

¶ 46        Viewing the evidence in the light most favorable to the State, we find the evidence sufficient to permit a rational trier of fact to find defendant knew the gun and cocaine were inside the truck. The locations where the gun and cocaine were found (the lower center console and the pouch on the back of the front-passenger seat, respectively), are places where contraband is rarely found without being accounted for. Furthermore, as the registered owner and driver of the truck, defendant had regular, ongoing control over the area where the contraband was found. See *id.* ("Regular and ongoing control over a vehicle might be established through proof that the defendant owns or regularly drives the vehicle.").

¶ 47        Still, defendant maintains the State failed to prove knowledge because most of the factors articulated in *Bailey* were not met here. In *Bailey*, the reviewing court found

> "[f]actors from which knowledge could be inferred include: (1) the visibility of the weapon from [the] defendant's position in the car, (2) the period of time in which the defendant had an opportunity to observe the weapon, (3) any gestures by the defendant indicating an effort to retrieve or hide the weapon, and (4) the size of the weapon." *Bailey*, 333 Ill. App. 3d at 891-92 (citing *People v. Davis*, 50 Ill. App. 3d 163, 168 (1977)).

The court added the trier of fact should also consider any other relevant circumstantial evidence, including whether the defendant owned the contraband or the vehicle where the contraband was found. *Id.* at 892.

¶ 48    Defendant's reliance on *Bailey* is misplaced. In *Hampton*, the reviewing court applied the *Bailey* factors "to determine whether the State offered circumstantial evidence from which [the] defendant's knowledge could be inferred." *Hampton*, 358 Ill. App. 3d at 1033. However, the *Hampton* court addressed the *Bailey* factors only after determining the State failed to present evidence of "regular, ongoing control over the vehicle" by the defendant, who was driving a vehicle he did not own for the first time, thus preventing an inference of knowledge. *Id.* at 1032-33. In this case, by contrast, the stipulated evidence showed defendant was not only the driver of the vehicle, but also the registered owner. This evidence was sufficient to demonstrate defendant's regular, ongoing control of the truck, rendering the *Bailey* factors inapplicable.

¶ 49    Moreover, in addition to defendant's status as the owner and driver of the truck, there was other relevant circumstantial evidence to support an inference of knowledge in this case. First, during the traffic stop, defendant told Mathis he did not know Alejandro, the only other passenger in the truck, to have a gun. Second, defendant's black Nike bag was on the floor directly under the pouch where the cocaine was found, and the black Nike bag contained apparent drug paraphernalia, specifically, a scale. These facts, along with the fact defendant was the owner and driver of the vehicle at the time of the stop, were more than sufficient to allow a rational trier of fact to find defendant knew the contraband was in the truck.

¶ 50    In sum, we find the State proved beyond a reasonable doubt defendant had control over the inside of the truck and knew the contraband was present, thereby demonstrating defendant had constructive possession of it. Accordingly, we affirm defendant's convictions for

possession of a controlled substance and AUUW.

¶ 51                              III. CONCLUSION

¶ 52          For the reasons stated, we affirm the trial court's judgment.

¶ 53          Affirmed.